UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAUN NICHOLAS MOORE,

    Plaintiff,

v.

BRIAN CHOBOT,

    Defendant.

                                /

Case No. 1:23-cv-132

Hon. Jane M. Beckering

**REPORT AND RECOMMENDATION**

Plaintiff Shaun Nicholas Moore ("Moore") is a prisoner in the custody of the Michigan Department of Corrections ("MDOC"). Moore filed this civil rights lawsuit against Deputy Brian Chobot for an incident which occurred at the St. Joseph County Jail ("Jail") before his incarceration at the MDOC. This matter is now before the Court on defendant's motion for summary judgment (ECF No. 17). The motion is unopposed.[1]

    **I.**    **Moore's allegations**

Moore alleged as follows:

On 7/26/2021 at 1100 hours I Shaun Moore was in a verbal altercation with Shane Henderson when deputy Chobot came into the cell block [sic] told me back away from Mr. Henderson when I did comply I kept arguing with Shane Henderson thats [sic] when deputy Chobot lost his cool and used both of his hands to forcefully push me into the wall wear [sic] he injured my back and neck (video will confirm this) then I [illegible] ask what he did that for he then reached for my neck choking me I then moved his hand from my throat the first time and he immediately [illegible] again I pushed him back to protect myself and asked what are you doing he pulled out his taser and I asked are you gonna shoot me or give me a direct order to go to my cell or out the unit he then told me leave the unit I proceeded out the door toward the holding cells wear [sic] Sgt Hasbrook took care of the rest of the incident I asked to press charges but was denied.

---

[1] The Court granted defendant's motion to strike Moore's untimely response in a separate order.

1

Compl. (ECF No. 1, PageID.3). For his relief, Moore stated:

> File assult [sic] charges against set [sic] Officer Brian Chobot compensation for mental and emotional trauma in the means of 200,000.00 – 1,000,000.00 correction on current conviction charges dealing with consecutive sentencing [sic] A formal apology and all lawyer fees and court fees paid for by Officer Brian Chobot.

*Id*. at PageID.4.

## II.  Defendant's motion for summary judgment

### A.  Legal standard

Defendant has moved for summary judgment. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

As discussed, defendant's motion is unopposed. "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). The trial court is required to "intelligently and carefully review the legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Id*. at 405.

**B.    Eighth Amendment**

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

At the time of this incident on July 26, 2021, Moore was a convicted prisoner, having been sentenced on July 15, 2021, to serve 41 days at the Jail. *See* Docket Sheet #20-2792FY (ECF No. 18-3, PageID.82). The Eighth Amendment embodies a constitutional limitation

on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id*.

Plaintiff's claim that Deputy Chobot used excessive force is analyzed giving deference to the officers as they attempt to maintain order and discipline within dangerous institutional settings. The Supreme Court has held that "whenever guards use force to keep order," the standards enunciated in *Whitley v. Albers*, 475 U.S. 312 (1986) should be applied. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). *See also Wilkins v. Gaddy*, 559 U.S. 34, 37-39 (2010) (applying *Whitley*). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7; *Wilkins*, 559 U.S. at 37. In determining whether the use of force is wanton and unnecessary, the court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any efforts made to temper the severity of the forceful response. *Hudson*, 503 U.S. at 7 (citing *Whitley*, 475 U.S. at 321).

An Eighth Amendment claim consists of an objective and a subjective component. *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). "The objective component requires the pain inflicted to be 'sufficiently serious.' " *Id*. (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). This component requires a contextual investigation, one that is responsive to contemporary standards of decency. *Hudson*, 503 U.S. at 8 (internal quotation marks omitted). While the extent

4

of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins*, 559 U.S. at 37. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

"The subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. "The relevant inquiry is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Hudson*, 503 U.S. at 7. In evaluating this component,

> Courts may consider "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078. Courts may also consider the circumstances "as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response." *Id*.

*Williams*, 631 F.3d at 383.

### C.  Discussion

Defendant Brian Chobot's affidavit in support of the motion for summary judgment set forth the following facts. He was employed as a Deputy at the St. Joseph County Correctional Facility for 16 years and 10 months and was the Defensive Tactics and TASER instructor for 12 of those years. Chobot Aff. (ECF No. 18-2, PageID.78). As stated in the Incident Report #1892:

> On 07/26/2021 at about 11:00 hrs, I (Deputy Chobot) was in the South Wing doing a cell check when Deputy Schrader, who was sitting in the cube for me, called on the radio for a possible fight in West Wing. I left South Wing and entered West Wing and could see inmates Carson-Moore, Shaun and Hendersen [sic], Shane in an argument by the tables in the dayroom. I walked into the wing towards both inmates to try and separate them. I placed my right hand on Inmate Carson-Moore's chest and tried to walk him down the hall to separate the two inmates. Inmate Carson-Moore refused to move, so I grabbed him by the front of his shirt and placed him against the south wall. Inmate Carson-Moore reached up and grabbed this

> deputies [sic] throat with his hand.  At that point I let go of his shirt and removed his hand from my throat.  Inmate Carson-Moore continued to reach for this deputy and this deputy continued to keep Inmate Carson-Moore from grabbing this deputies throat.  At one point I placed my hand briefly on Inmate Carson-Moore's throat.  I was then able to back up and draw my taser.  I then ordered Inmate Carson-Moore out of the wing where he was taken by Deputies Mohney and Niemi.  Once Inmate Carson-Moore was out of the wing I packed up his belongings from the cell and continued with my cell check.

Chobot Aff. at PageID.78-79.  The physical contact between Moore and Deputy Chobot was about 25 seconds.  *See* Chobot's Brief (ECF No. 18, PageID.56-63) (video screenshots with time stamps 11:03:21-11:03:46).

        Deputy Chobot further stated,

> 5. That based on my training and experience, I believed a physical altercation between Plaintiff and Shane Henderson was imminent without intervention, which posed a significant threat of physical harm to the two inmates and any officers tasked with ending the altercation.  It also disrupts the security of the whole facility as other inmates may attempt to take advantage of the distraction.

Chobot Aff. at PageID.79.

        Deputy Chobot stated that the force he applied "was a good-faith effort to maintain and restore discipline."  *Id*.  Chobot explained,

> 7. That based on my training and experience, including as a Defensive Tactics and TASER instructor, I constantly re-evaluated the rapidly evolving situation and deployed only the amount of force I reasonably believed to be necessary to achieve the legitimate, non-punitive purpose of de-escalation.

*Id*.  Chobot also stated that his "subjective intent was to separate Plaintiff and Henderson so as to prevent a physical altercation, and then to protect my own personal safety."  *Id*.  Chobot further stated that, "[o]nce I achieved those goals and discipline was restored, I ceased the use of force against Plaintiff."  *Id*.

        Deputy Chobot's unrebutted affidavit and narrative is consistent with the surveillance video of the incident.  *See* Chobot's Brief at PageID.52-63) (video timeline with

6

screen shots); Video (ECF No. 18-1).  Other evidence includes a Narrative Report from the St. Joseph County Sheriff's department requesting that charges be filed against Moore for assaulting / resisting /obstructing Chobot.  *See* Narrative Report (ECF No. 18-5).  It appears that the St. Joseph County Prosecutor's Office filed charges and then dismissed them as part of plea negotiations "to whittle [Moore's] 7 felony files to a more manageable 2 or 3 jury trials".  *See* E-mail from prosecutor (ECF No. 18-7, PageID.131); Moore's Criminal History (ECF No. 18-8).

Based on this record, Deputy Chobot's brief use of physical force did not amount to excessive force.  Viewing the evidence in the light most favorable to the non-moving party (Moore), the Court concludes that Chobot's response to the situation was a good faith attempt to maintain or restore discipline and that this minimal use of force was intended to de-escalate the situation.  Accordingly, Deputy Chobot's motion for summary judgment should be granted.[2]

### III.    Recommendation

For the reasons set forth above, I respectfully recommend that defendant Deputy Chobot's motion for summary judgment (ECF No. 17) be **GRANTED** and that this action be **terminated**.

Dated: August 8, 2024                    /s/ Ray Kent
                                         RAY KENT
                                         United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[2] Deputy Chobot also claims qualified immunity.  It is unnecessary to address this affirmative defense because Moore has failed to establish that Chobot violated a constitutional right.